UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| STEPHEN G. F., | Case No. 2:22-cv-02006-BNW |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING ECF No. 12 And GRANTING ECF No. 15 Countermotion to Affirm the Agency Decision** |
| MARTIN O'MALLEY, Commissioner of Social Security\*, | |
| Defendant. | |

Presently before the Court is Plaintiff's Motion for Reversal and Remand. (ECF No. 12). Defendant filed a response in opposition (ECF No. 14) and a Countermotion to Affirm the Agency Decision (ECF No. 15). Plaintiff then filed a reply in support of his motion. (ECF No. 16). Plaintiff also filed Notice of New Authority. (ECF No. 17). For the reasons stated below, the Court affirms the Commissioner's final decision.

**I.      Background**

On February 11, 2021, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging an onset date of January 20, 2020. ECF No. 9-1[1] at 176. Plaintiff's claim was denied initially and on reconsideration. *Id*. at 89 and 95. A telephonic hearing was held before Administrative Law Judge ("ALJ") David K. Gatto on June 2, 2022. *Id*. at 53-68. On July 14, 2022, ALJ Gatto issued a decision finding that Plaintiff was not disabled. *Id.* at 23-52.  On October 5, 2022, the Appeals Council denied review. *Id*. at 5-9. On December 1, 2022, Plaintiff commenced this action for judicial review under 42 U.S.C. § 405(g). *See* Compl. (ECF No. 1).

///

---

\* Martin O'Malley has been substituted for his predecessor in office, Kilolo Kijazaki, pursuant to Federal Rule of Civil Procedure 25(d).

[1] ECF No. 9-1 refers to the Administrative Record in this matter which was electronically filed. (Notice of Electronic Filing (ECF No. 9)). All citations to the Administrative Record will use the CM/ECF page numbers.

## II. Discussion

### A. Standard of Review

Administrative decisions in Social Security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence supports more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue

before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### B.  Disability Evaluation Process and the ALJ Decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Moreover, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then a finding of disabled is made. *Id*. § 404.1520(d). Otherwise, the analysis proceeds to step four.

However, before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. In addition, the work must have lasted long enough for the individual to learn the job and performed an SGA. If the individual has the RFC to perform her

past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). ECF No. 9-1 at 27-44.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 20, 2020, the alleged on-set date. *Id*. at 27.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: unspecified depressive disorder; unspecified anxiety disorder; obsessive-compulsive disorder; post-traumatic stress disorder (PTSD): obesity; degenerative joint disease knees; and, degenerative disc disease of the lumbar and cervical spine (20 CFR 404.1520(c)). *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 30.

The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b) except that he has the following additional limitations: he can frequently push and/or pull with his bilateral upper extremities; he should only occasionally reach overhead with his bilateral upper extremities; he can frequently reach in all other directions; he should only occasionally climb ramps and/or stairs; he should never climb ladders, ropes, or scaffolds; he should only occasionally balance, stoop, kneel, or crouch; he should never crawl; and, he should never be exposed to vibration or to hazards (unprotected heights and/or dangerous moving machinery). Despite mental impairment, he is able to understand, carry out, and remember simple

work instructions, use judgment to make simple work-related decisions and adapt to occasional change in a routine work setting, to perform simple work tasks with occasional interaction with all others in the workplace. *Id*. at 34.

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. *Id*. at 44.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found the claimant capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id*. at 45-46. Specifically, the ALJ found that Plaintiff can work as a subassembler, an advertising material distributor, and a routing clerk. *Id*. at 46. The ALJ then concluded that Plaintiff was not under a disability at any time since January 20, 2020. *Id*.

### 1. Legal Standard Governing Step Five of the Sequential Evaluation

At step five, an ALJ must determine whether the claimant's impairments prevent him from performing any other substantial gainful activity. *Parra v. Astrue,* 481 F.3d 742, 746 (9th Cir. 2007). At this step, the burden is on the Commissioner to show that the claimant may perform other types of work in the national economy, given the claimant's age, education, and work experience. *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006). The ALJ can meet the burden of showing that there is other work in "significant numbers" in the national economy that the claimant can perform by eliciting the testimony of a vocational expert ("VE"). *Lounsburry,* 468 F.3d at 1114 (quoting *Tackett v. Apfel,* 180 F.3d 1094, 1098–1099, 1101 (9th Cir. 1999)); *Burkhart v. Bowen,* 856 F.2d 1335, 1340 (9th Cir. 1988). In order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations. *Andrews,* 53 F.3d at 1044; *Roberts,* 66 F.3d at 184. The hypothetical should be "accurate, detailed and supported by the medical record." *Tackett,* 180 F.3d at 1101.

Social Security Ruling ("SSR") 00–4p clarifies the standards for identifying and resolving conflicts between occupational evidence provided by a VE and information in the Dictionary of Occupational Titles (4th ed. 1991) ("DOT"), a job information resource published by the

Department of Labor. *See* SSR 00–4p, at *2.[2] Specifically, the Commissioner uses the DOT and "its companion publication," the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational titles ("SCO"), at both steps four and five, and relies "primarily on" those publications "for information about the requirements of work in the national economy." *Id.* *See also Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007). Thus, while the ALJ is not bound by the information contained in the DOT or SCO, these publications are the primary sources of vocational information at these steps.

Pursuant to SSR 00–4p, before relying on a VE's testimony at step five to support a disability determination, an ALJ must do three things. First, at the hearing, the ALJ has an "affirmative responsibility to ask about any possible conflict between [the VE's] evidence and information provided in the [DOT]." *Id.* at *4. An ALJ may not properly rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT. *Massachi* 486 F.3d at 1152 ("[W]e address the question whether, in light of the requirements of [SSR] 00–4p, an ALJ may rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles. We hold than an ALJ may not."). If the ALJ does not ask the VE whether his testimony conflicts with the DOT, the reviewing court cannot determine whether substantial evidence supports the ALJ's findings. *Id.* at 1153-54 (citing *Prochaska v. Barnhart,* 454 F.3d 731, 736 (7th Cir. 2006)); *see also Travis v. Astrue,* 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence.").

Second, if the VE's testimony appears to conflict with the DOT, the ALJ must "obtain a reasonable explanation for the apparent conflict." SSR 00–4p, at *4. Third, if the VE's testimony

---

[2] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari,* 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen,* 882 F.2d 1453, 1457 (9th Cir. 1989).

is not consistent with the information in the DOT, the ALJ must "explain in the determination or decision how he or she resolved the conflict ... irrespective of how the conflict was identified." *Id*.

**III. Analysis**

    **A. The ALJ did not need to consider additional vocational testimony concerning the occupations of subassembler and routing clerk because the conflict, if any, was not apparent**

    Plaintiff alleges there was an apparent conflict between an RFC limitation to "occasional changes in the workplace" and the requirements of the subassembler and routing clerk occupations. Both subassembler and routing clerk occupations require Reasoning Level 2. *See* DOT 729.684-054, 1991 WL 679729; 222.687-022, 1991 WL 672133. Reasoning Level 2 requires the ability to:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

DOT Appendix C, 1991 WL688702.[3] Plaintiff argues that the ALJ failed to resolve an apparent conflict between his RFC limitation and the reasoning level required for subassemblers and routing clerks. The conflict, according to Plaintiff, is that the jobs of subassembler and routing clerk require an individual to be able to handle "a few concrete variables" in any given task. By contrast, the ALJ found the Plaintiff's RFC limited him to "occasional changes in the workplace." In short, Plaintiff argues there is an apparent conflict given that handling "a few concrete variables" exceeds his RFC, which determined he is limited to "occasional changes in the workplace."

    "For a difference between an expert's testimony and the Dictionary's listings to be fairly characterized as a conflict, it must be obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). "This means that the testimony must be at odds with the Dictionary's listing of job requirements that are essential, integral, or expected." *Id.* While the language in the ALJ's

---

[3] By contrast, Reasoning Level 1 requires only the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT Appendix C.

limitation and the DOT are not identical, they do not necessarily conflict. *See Ward v. Comm'r of Soc. Sec.Admin.*, 2023 WL 2425016 at *4 (D. Ariz. March 9, 2023) ("a claimant who is incapable of dealing with changes in the work environment any more frequently than "occasionally" is not necessarily precluded from dealing with "a few concrete variables.")).

In determining whether the ALJ's limitation corresponds to a different Reasoning Level than the VE's testimony, courts look to definitions of various Reasoning Levels. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002-1003 (9th Cir. 2015); *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). "However, they do not mechanically match words from the ALJ's limitation to a given Reasoning Level." *Ward,* 2023 WL 2425016 at *5. Thus, the fact that the ALJ used the phrase "occasional changes in the workplace" in his limitation does not automatically limit Plaintiff to Reasoning Level 1 jobs simply because the Reasoning Level 1 uses the word "occasional." *Id.*

Plaintiff relies solely on a case in which a limitation to "few frequent changes" was found consistent with Level 2 Reasoning. *Kelsey v. Berryhill*, No. 6:16-cv-01253, 2017 WL 3218072, at *4 (D. Or. July 27, 2017).[4] But a finding that this phrase is consistent with Level 2 Reasoning does not stand for the proposition that and RFC with limitations to "occasional change" is *inconsistent* with Level 2 Reasoning. *Id.*

The ultimate question is whether a person who is limited to only dealing with "occasional changes in the workplace" is precluded from carrying out the functions of a job that may require dealing with "a few concrete variables." The cases above suggest the answer is "no." As a result, there was no need for additional questioning of the VE. In turn, the ALJ's acceptance of the VE's testimony was appropriate because there was no apparent conflict and substantial evidence supported the determination that Plaintiff could work as a subassembler or routing clerk.

---

[4] Plaintiff has attempted to buttress his argument by filing Notice of New Authority, ECF No. 17 (citing *Leach v. Kijakazi*, 70 F.th 1251, 1257-58 (9th Cir. 2023) (when an ALJ omits or meaningfully misstates claimant's limitations when posing a question to a VE, they err by relying on the resulting testimony). Here, Plaintiff does not argue that the ALJ misstated Plaintiff's limitations when asking the VE a hypothetical. Further, *Leach* applies to a limitation of physical exertion rather than mental ability. *Id.* at 1258. As a result, *Leach* does not alter the Court's analysis.

**B. There was no apparent conflict between the VE testimony and the DOT description of advertising material distributor**

Plaintiff argues the ALJ failed to resolve an apparent conflict regarding the advertising material distributor occupation. ECF No. 12 at 9-10. He argues that occupation is classified as "light work" by the DOT. DOT 230.687-010, 1991 WL 672162. In turn, the regulation cited by the ALJ describes "light work" as "requir[ing] a good deal of walking or standing." 20 C.F.R. § 404.1567(b). A Social Security ruling further explains: "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6. But Plaintiff argues that the advertising material distributor requires more than six hours of standing or walking in a day relying on pages from Occu Collect which purport to represent data collected from the Bureau of Labor Statistics. *See* ECF No. 9-1 at 431, 452-53.[5] .

According to section 404.1567, "terms"—including "light"— "have the same meaning as they have in the [DOT]." The DOT and its associated document, the SCO, define light work as frequently lifting/carrying a maximum of 10 pounds. DOT App. C, 1991 WL 688702; SCO, App. C. The DOT and SCO define "frequently" as existing "from 1/3 to 2/3 of the time" for an 8-hour workday. *Id.* The standing/walking requirements of light work described in SSR 83-10 are directly tied to the DOT definitions of light work. 20 C.F.R. § 404.1567(b). Lifting and carrying 10 pounds up to 2/3 of an 8-hour workday equates to approximately 5.3 hours, which is less than the 6 hours described in SSR 83-10. As a result, there was no obvious or apparent conflict for the ALJ to resolve.

Finally, even if there were an apparent conflict that needed to be resolved by further questioning by the ALJ, the error is harmless, because there were other jobs (such as routing clerk and subassembler) that exist in significant numbers in the national economy that Plaintiff can

---

[5] However, this data is not provided with context or analysis, such as an affidavit from an expert describing how the advertising material distributor occupation is categorized by the Bureau of Labor Statistics as "Helpers –Production Workers" and the how the statistics or data Plaintiff is using was compiled. Without more, the Court finds that Plaintiff has not demonstrated an apparent conflict that requires the ALJ to question the VE further.

perform. An error is harmless "if it is 'inconsequential to the ultimate nondisability determination.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).

**C. There was no Apparent Conflict between the ALJ's limitation that Plaintiff only have occasional interaction with all others in the workplace and the occupational requirements of routing clerks.**

The ALJ limited Plaintiff to "occasional interaction with all others in the workplace." ECF No. 9-1 at 43. Plaintiff now argues that the occupation of routing clerk exceeds this limitation citing O*NET 43-5071.00 - Shipping, Receiving, and Inventory Clerks (work context report) (O*NET Dataset 27.0). ECF No. 9-1 at 341. The O*NET report shows that working with a group or team is extremely important in 99% of the jobs in the group and that such interactions occur every day in 90% of the jobs. *Id.* at 342-343.

At the hearing, the ALJ asked the VE "[h]as your testimony been consistent with the DOT and the SCO?" *Id.* at 65. The VE responded, "It has, Your Honor. I would make note, however, that the respective factors not addressed in the DOT, such as exposure to coworkers, supervisors, and the public . . . that's all based on my own training, experience, expertise to supplement the DOT." *Id.* The VE then identified Job Browser Pro as the source of job numbers he used in identifying occupations that Plaintiff could perform with his limitations. *Id.* Plaintiff's attorney made no objection to the VE's qualifications or impartiality. *Id.* at 62. On cross-examination, Plaintiff's attorney failed to question the VE about his sources or the methods that he used to compile his jobs data. *Id.* at 66-67. The only question that he asked the VE about limitations in working with others was a hypothetical that assumed the limitation would be "no exposure to the general public." *Id.* at 66.

The Court cannot find that the ALJ failed to resolve an apparent conflict, because nothing in the DOT conflicted with the VE's testimony that a person limited to occasional interaction with co-workers may perform the occupation of routing clerk. The DOT description of the occupation indicates that the main duties involve sorting items for delivery. Routing Clerk, DOT 222.687-022, 1991 WL 672133. The DOT description indicates that dealing with people is "not

significant" and that talking and listening are activities or conditions that do not exist with respect to the occupation. *Id.* Additionally, the fifth digit of the DOT occupational code for the occupation is "8," meaning that this occupation involves the lowest level of complexity in relating to people. *See* DOT, Parts of the Occupational Definition, 1991 WL 645965 (explaining that the fifth digit of each occupational code reflects the level of interaction with people necessary for that particular job, with "8" referring to "taking-instructions-helping" and signifying the lowest level of complexity). Finally, the routing clerk occupation is classified as unskilled, Specific Vocational Preparation ("SVP") level 2. DOT 222.687-022, 1991 WL 672133; SSR 00-4p, 2000 WL 1898704, at *3 (unskilled work corresponds to an SVP of 1 to 2). Unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people." SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985).

Plaintiff argues that an apparent conflict existed because vocational information Plaintiff collected from O*NET established that the routing clerk occupation required interpersonal interaction significantly higher than "occasionally" and that interpersonal relationships were extremely or very important to performing the duties of a routing clerk. ECF 12 at 8 (citing ECF No. 9-1 at 341).[6] However, the ALJ is only required to resolve apparent conflicts between VE testimony and the DOT. *See* SSR 00-4p, 2000 WL 1898704; *Gutierrez*, 844 F.3d at 808. The Ninth Circuit has rejected any requirement for an ALJ to resolve conflicts between VE testimony and other sources. *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (rejecting claimant's argument that an ALJ must *sua sponte* resolve conflicts between VE testimony and the County Business Patterns and the Occupational Outlook Handbook).

In addition, Plaintiff forfeited his challenge to the vocational expert's testimony based on non-DOT data because he did not raise this issue at his administrative hearing. *See Shaibi v.*

---

[6] The Court is not swayed by Defendant's argument that because the data was collated by Occu Collect that its accuracy is subject to question. However, no authority has been cited that data from O*Net or Job Browser Pro either controls or must be relied on by the ALJ when it conflicts with the VE's testimony without more. *See, e.g.*, *Dickerson v. Saul*, No. 2:20-CV-01585-DJA, 2021 WL 3832223, at *6 (D. Nev. Aug. 27, 2021); *Tommy D. J. v. Saul*, No. EDCV 20-1013-RAO, 2021 WL 780479, at *5 (C.D. Cal. Mar. 1, 2021) ("the ALJ is not required to reconcile conflicts between the VE's testimony and non-DOT sources, such as O*NET OnLine[.]")

*Berryhill*, 883 F.3d 1102, 1109–10 (9th Cir. 2017). Instead, Plaintiff raised it for the first time to the Appeals Council by offering competing vocational evidence. Claimants represented by attorneys must raise "all issues and evidence" to the ALJ to avoid forfeiture. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Plaintiff's counsel could have questioned the expert about his methods for compiling data, his qualifications, or what "training, experience, expertise" drove his supplementation of the DOT, but did not. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1156 (2019). Instead, counsel let the VE supplement his reliance on the DOT with his "training, experience, expertise" without challenge. While the Court recognizes that claimants will not be anticipate the particular occupations a VE might list and the corresponding vocational data, a claimant represented by counsel must do more:

> A claimant may do so by inquiring as to the evidentiary basis for a VE's estimated job numbers, or inquiring as to whether those numbers are consistent with the CBP, OOH, or other sources listed in 20 C.F.R. § 404.1566(d). If that is done, an ALJ, on request, ordinarily would permit the claimant to submit supplemental briefing or interrogatories contrasting the VE's specific job estimates with estimates of the claimant's own. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 451 (2d Cir. 2012). If the ALJ declines to do so, a claimant may raise new evidence casting doubt on a VE's job estimates before the Appeals Council, provided that evidence is both relevant and "relates to the period on or before the ALJ's decision." *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012).

*Shaibi*, 883 F.3d at 1110. Accordingly, Plaintiff forfeited this claim on appeal. *See Shaibi*, 883 F.3d at 1109.[7]

       Even if not forfeited, Plaintiff's challenge to the vocational and jobs data evidence on which the vocational expert relied fails. First, the raw data that Plaintiff submitted to the Appeals Council without any foundation or argument offers no ground to conclude that the vocational expert's testimony was "so feeble[ ] or contradicted[ ] that it would fail to clear the substantial-

---

[7] Similarly, Plaintiff submitted jobs number data to the Appeals Council, that without more foundation from Plaintiff, appears to be compiled by Occu Collect without specific attribution to where the data was derived from. *See* ECF No. 9-1, 469-474. Notably, the data for subassemblers and routing clerks does not appear to help Plaintiff's argument, with several hundred thousand jobs in each category. Regardless, the Court finds that this argument has been forfeited for failing to raise it before the ALJ. As the Court has already identified, Counsel accepted the VE's qualifications without question. When given the chance, counsel failed to question the VE regarding the basis of his testimony regarding job numbers and vocational requirements.

evidence bar." *Biestek*, 139 S. Ct. at 1155–56. Moreover, the Ninth Circuit has rejected this argument in a very similar case. *See Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021) (holding that non-DOT data "does not necessarily establish either legal error or a lack of substantial evidence" where "a qualified vocational expert is presumptively familiar with" disability law terms and their "attendant limitations," and the record reflects the expert's "**unchallenged** expertise and [the expert's] reference to the [DOT]") (emphasis added). "[E]ven where the evidence of record is 'susceptible to more than one rational interpretation,' [the Court] must defer to the Commissioner's interpretation of the evidence." *Id.* (quoting *Andrews*, 53 F.3d at 1039–40).

      Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff could perform the occupation of routing clerk and that jobs exist in significant numbers in the national economy that claimant can perform.

**IV. Conclusion**

      Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 12) is **DENIED**;

      IT IS FURTHER ORDERED that Defendant's Countermotion to Affirm the Agency Decision (ECF No. 15) is **GRANTED;**

      IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant and against Plaintiff.

      DATED: March 11, 2024.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE